UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON M VARGAS,<br><br>        Plaintiff,<br><br>    v.<br><br>CRAIG KOENIG, et al.,<br><br>        Defendants. | Case No. 22-cv-02721-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DIRECTIONS TO PLAINTIFF**<br><br>Re: ECF No. 44 |

Plaintiff Jason Vargas, an inmate housed at Correctional Training Facility ("CTF"), has filed this *pro se* civil rights action against the following CTF correctional officials: former warden Craig Koenig, Captain D. Metcalf; Captain Enrique Galvan, and Chief Medical Executive S. Posson. Now pending before the Court is Defendants' motion to dismiss the amended complaint. ECF No. 44. Plaintiff has filed an opposition, ECF No. 52, and Defendants have filed a reply, ECF No. 52. For the reasons set forth below, the Court grants in part and denies in part Defendants' motion to dismiss, ECF No. 44; and grants Plaintiff leave to file a second amended complaint.

**DISCUSSION**

**I.    Background**

Plaintiff commenced this action on May 2, 2022, by filing the complaint docketed at ECF No. 1. Plaintiff has since filed an amended complaint, docketed at ECF No. 39, which is the operative complaint. The operative complaint makes the following relevant allegations.

Plaintiff self-identifies as a Mexican male, and was housed at CTF during the relevant time period. Prior to July 20, 2020, CTF had no COVID cases. On July 20, 2020, defendant Koenig, who was CTF warden at the time, and 40 other prison guards executed a 3 a.m. raid, dubbed

"Operation Akili," with the intent to injure and terrorize Black inmates and infect the Black inmates with COVID-19. Defendant Koenig knew, or should have known, that this raid would be a COVID-19 superspreader event and that it would cause COVID-19 to spread from the Black inmates to all other inmates, including Plaintiff, because *inter alia* the officers conducting the raid told the inmates, "By the time this ordeal is over you niggers will have COVID-19; we don't care about COVID-19; I hope you get COVID-19; you're going to get COVID; You're not allowed to put your masks on; You have COVID now; Everyone's gonna catch Coronavirus anyway; we don't care if you catch COVID . . .;" and because the inmates were forced to wait in the facility cafeteria for hours, face-to-face and shoulder-to-shoulder without masks. On or about July 30, 2022, inmates began testing positive for COVID-19. Instead of locking down CTF, Defendants ensured the spread of COVID-19 when they engaged in the following actions or inactions:

- deliberately housed COVID-positive inmates with COVID-negative inmates;
- allowed COVID-positive inmates to use the same showers, phones, and eating trays as COVID-negative inmates;
- ran showers for COVID-negative prisoners while COVID-positive prisoners were moving out to quarantine;
- moved inmate Kim into X-Wing when he was COVID-positive;
- moved inmate Garcia into X-Wing before his COVID quarantine period was over;
- allowed for significant delays in testing and providing results;
- failed to quarantine COVID-positive inmates;
- refused to lock down CTF Central when an outbreak was evident and serious injuries imminent; and
- allowed CTF officers to routinely ignore COVID prevention protocols, such as masking and social distancing.

The mixing of COVID-positive and COVID-negative inmates was deliberate, sadistic, and retaliatory as Defendants told Plaintiff: "We need to take the wing back; You can blame it on those inmates who likes to file grievances; File a lawsuit on that; We'll deal with the lawsuits as they arise; Let a judge tell us we have to keep infected inmates out the wing; This is a novel disease, the courts don't know what to do." Defendant CTF Chief Medical Executive Posson

failed to take any steps to ensure that defendant Koenig, Metcalf, and Galvan exercised reasonable diligence to prevent the spread of COVID-19.  As a result, on November 30, 2020, Plaintiff learned that he had contracted COVID-19.  To this day, Plaintiff suffers from Long COVID symptoms and has an immune system compromised by having contracted COVID-19.  As a result, Plaintiff is more susceptible to Valley Fever.  Plaintiff ultimately contracted Valley Fever, which has exacerbated his COVID-19 infection.  *See* ECF No. 39 at 7-14; ECF No. 40.

Plaintiff attached the following exhibits to his amended complaint that are relevant to the motion to dismiss.

- **Grievance No. 24762.**  In Grievance No. 24762, which was submitted on August 4, 2020, Plaintiff requested "Meaningful Consideration for Release on Parole due to Vulnerability of Significant Injuries & Death from COVID-19 Infection & Related Illnesses," arguing that he should be released from prison on parole because he had multiple health issues, such as hypertension, that made him especially susceptible to "suffer[ing] excruciating pain & possibly death if [he] contract[ed] COVID-19 with the prison system in its current state"; and because he faced a substantial risk to his health by remaining in the "congested" prison environment.  Grievance No. 24762 does not reference Operation Akili or any specific prison policies or decisions that rendered Plaintiff particularly susceptible to contracting COVID.  The grievance was denied on the grounds that Plaintiff's conviction made him ineligible for early release, and the grievance received a "time expired" decision at the headquarters (final) level.  ECF No. 39 at 38-50.

- **Grievance No. 70624**: Grievance No. 70624, submitted on December 21, 2020, alleged that CTF officials, including Koenig, Metcalf, and Galvin "and all other state employees acting in concert under color of law incorporated here as John Does 1-50," deliberately exposed Plaintiff to COVID-19 by receiving an inmate from a pandemic institution and not first quarantining the inmate; moving inmates within CTF Central while they awaited COVID results; allowing a COVID-positive inmate to work in the kitchen; moving inmates in Facility C, X Wing, before their incubation period was over; and allowing COVID-positive inmates to shower at the same as COVID-negative inmates.  On January 20, 2021, a first level decision was issued, denying the grievance.  ECF No. 39 at 55-60.  On February 15, 2021, Plaintiff appealed the first level decision.  ECF No. 39 at 51-54.  Plaintiff states that the Office of Appeals failed to issue a final-level decision on this grievance within the required time.  ECF No. 39 at 13.

- **Grievance No. HC 2100382**: Grievance No. HC 2100382, submitted on April 12, 2021, alleged that Plaintiff was denied medical treatment for his Valley fever infection.  This grievance was denied at both the institutional level (the first level) and the headquarters' level (the final level).  ECF No. 39 at 61-74.

- **September 15, 2021 Government Claims Program Notice.**  In a notice dated September 15, 2021, the California Department of General Services

3

rejected Plaintiff's Government Claim No. 21003344, on the grounds that the claim involved complex issues beyond the scope of analysis and legal interpretation typically undertaken by the Government Claims Program. The notice informed Plaintiff that if he wished to pursue court action regarding the claim, he must do so within six months from the date the notice was personally delivered or deposited in the mail. ECF No. 39 at 76.

The Court found that, liberally construed, the amended complaint's allegations that defendants Koenig, Metcalf, Galvan, and Posson deliberately allowed the spread of COVID-19 via the July 20, 2020 raid and via their subsequent decisions to mix COVID-positive inmates with the general population and with uninfected X-Wing inmates stated a cognizable Eighth Amendment claim for deliberate indifference to inmate safety; and stated cognizable state law claims for battery, negligence, and negligent supervision. ECF No. 40 at 2-3.

## II.     Motion to Dismiss

### A.     Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See City of Oakland v. BP PLC*, 969 F.3d 895, 910 (9th Cir. 2020). Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide a short and plain statement of the plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); *see also Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013). A court may dismiss a complaint for lack of cognizable legal theory or if the facts alleged fail to articulate the elements of a cognizable legal claim. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a motion to dismiss, the Court accepts as true all well-pleaded allegations and construes them in the light most favorable to the plaintiff. *Polanco v. Diaz*, 76 F.4th 918, 925(9th Cir. 2023). The reviewing court, however, "need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," *Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1161 (9th Cir. 2022), and need not accept as true legal conclusions cast in the form of factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to

4

relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted). "*Pro se* complaints must be held to less stringent standards than formal pleadings drafted by lawyers, especially when they are civil rights claims by inmates." *Tiedemann v. von Blanckensee*, 72 F.4tg 1001, 1007 (9th Cir. 2023). In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

**B.     Analysis**

Defendants offer several grounds for dismissal. Defendants argue that Plaintiff has failed to exhaust his administrative remedies for this claim, and the failure to exhaust is clear on the face of the complaint. With respect to the sole federal law claim, Defendants argue that the Eighth Amendment claim fails because Plaintiff cannot show a causal link between Defendants' alleged actions and his contracting COVID, and because the claim fails under the theory of respondeat superior. With respect to the state law claims, Defendants argue that these claims fail as a matter of law because Plaintiff has failed to comply with the California Government Claims Act; because Plaintiff has not alleged state law claims in that he has not shown battery or negligence and does not allege that Defendants were negligent supervisors; and because the state law claims are barred by the state law immunities set forth in Cal. Gov't Code §§ 820.2, 820.8, and 855.4. *See generally* ECF No. 44. In his opposition, Plaintiff argues that the motion to dismiss should be denied because the amended complaint adequately alleges a causal link between Operation Akili and his contracting COVID; because the amended complaint adequately alleges that each of the named defendants authorized, acquiesced, and proactively took part in deliberately introducing COVID-19 to the CTF inmate population and/or deliberately failed to take reasonable steps to abate the spread of COVID-19; and because prison officials were adequately and timely placed on notice. *See generally* ECF No. 52.

      **1.     Failure to Exhaust Administrative Remedies**

           **a.     CDCR Administrative Grievance Process**

5

The California Department of Corrections and Rehabilitation ("CDCR") provides inmates the right to administratively grieve and appeal any "policy, decision, action, condition, or omission by the [CDCR] or departmental staff that causes some measurable harm to their health, safety, or welfare." 15 Cal. Code Regs. § 3481(a) (eff. June 1, 2020).[1]

For non-healthcare grievances by inmates, there are two levels of review. At the first level, the inmate submits his claim on a CDCR Form 602-1 to the Institutional Office of Grievances at the prison where he is housed. 15 Cal. Code Regs. § 3482(a)(1), (c). In the Form 602-1, the inmate is required to "describe all information known and available to the [inmate] regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the [inmate's] knowledge." *Id.* at § 3482(c)(2). "In response, [the inmate] shall receive a written decision" from the Institutional Office of Grievances "clearly explaining the reasoning for the Reviewing Authority's decision as to each claim." *Id.* at § 3481(a). This written decision, referred to as a first level decision, does not exhaust administrative remedies. *Id.* at § 3483(l). If an inmate is dissatisfied with the first level decision, the inmate may appeal the decision to the second level by submitting a CDCR Form 602-2 to the CDCR's Office of Appeals ("OOA") within 30 days of receiving the first level decision. *Id.* at §§ 3481(a), 3485(a). The OOA shall ensure that a written decision is completed no later than 60 calendar days after receipt of the grievance. *Id.* at § 3485(g). The written decision shall clearly explain the reasoning for the decision in each claim. *Id.* at § 3481(a). A written decision containing one of the following decisions—"denied," "granted," "no jurisdiction," "identified as staff misconduct," "pending legal matter," or "time expired"—constitutes exhaustion of the administrative remedy process. *Id.* at § 3485(l). "Time Expired" means that the OOA was not able to respond to the grievance within 60 calendar days, resulting in the first level decision serving as the department's final decision. *Id.* at § 3485(g)(10).

---

[1] The regulations that set out the features of the administrative remedies process for California prisoners underwent a substantial restructuring in 2020. On March 25, 2020, and effective June 1, 2020, 15 Cal. Code Regs. §§ 3084-3084.9 were repealed and replaced with the renumbered and amended provisions at sections 3480 through 3487.

6

1    The healthcare grievance process is similar and also consists of two levels of review. At
2 the first level, the inmate submits his claim by filling out Form CDCR 602 HC's Section A and
3 submitting the Form 602 to his institution's Health Care Grievance Office ("HCGO"). 15 Cal.
4 Code Regs. § 3999.227(b). In Section A, the inmate is required to "document clearly and
5 coherently all information known and available to him or her regarding the issue," including "any
6 involved staff member's last name, first initial, title or position, and the date(s) and description of
7 their involvement." 15 Cal. Code Regs. § 3999.227(g). If the inmate does not have information to
8 identify the involved staff member(s), the prison regulations instruct the inmate to "provide any
9 other available information that may assist in processing the health care grievance." 15 Cal. Code
10 Regs. § 3999.227(g)(2). The HCGO shall process the grievance and return it to Plaintiff within
11 45 business days after the grievance is received. 15 Cal. Code Regs. § 3999.228(i). If an inmate
12 is dissatisfied with the first level/HCGO decision, the inmate may appeal the decision to the
13 second and final level by completing and signing CDCR Form 602 HC Section B, and submitting
14 the appeal to the Health Care Correspondence and Appeals Branch ("HCCAB") within 30
15 calendar days, plus five calendar days for mailing from the date noted on the CDCR 602 HC in the
16 "Date closed and mailed/delivered to grievant" section on page 1 of 2. 15 Cal. Code Regs.
17 § 3999.229(a). The HCCAB review constitutes the final disposition of a health care grievance and
18 exhausts administrative remedies. 15 Cal. Code Regs. § 3999.230(h). Prisoners cannot add new
19 claims during the grievance process. 15 Cal. Code Regs. § 3999.229(a)(3). However, the
20 HCCAB may, in its discretion, address new issues not previously included in the original health
21 care grievance. 15 Cal. Code Regs. § 3999.230(i). A headquarters/HCCAB level disposition
22 addressing new issues exhausts administrative remedies. 15 Cal. Code Regs. § 3999.230(j). Only
23 issues addressed in the headquarters/HCCAB level review are deemed exhausted. 15 Cal. Code
24 Regs. § 3999.230(i)–(j).

### b.  Legal Standard

26   The Prison Litigation Reform Act sets forth the following exhaustion requirement: "No
27 action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other
28 Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory, *Jones v. Bock*, 549 U.S. 199, 211 (2007), and requires "proper exhaustion" of available administrative remedies, *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 at 90–91. Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones*, 549 U.S. at 218. However, if an inmate's grievance does not comply with a procedural rule but prison officials decide it on the merits anyway at all available levels of administrative review, it is exhausted. *Reyes v. Smith*, 810 F.3d 654, 656–58 (9th Cir. 2016) (California inmate whose grievance failed to name all staff members involved in his case, as required by former 15 Cal. Code Regs. § 3084.2(a)(3), nevertheless exhausted claim of deliberate indifference to serious medical needs because that claim was decided on merits at all levels of review)

"The PLRA does not require that a prisoner's federal court complaint affirmatively plead exhaustion; rather, lack of exhaustion must be asserted as a defense." *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010). Failure to exhaust under the PLRA is an affirmative defense that the defendant must plead and prove. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). However, "[a] prisoner's concession to nonexhaustion is a valid ground for dismissal, so long as no exception to exhaustion applies." *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled on other grounds by Albino*, 747 F.3d at 1168–69. Because a challenge to a prisoner complaint based on the failure to exhaust administrative remedies typically requires recourse to documents and evidence outside the pleadings, the proper vehicle for raising a failure to exhaust defense is generally a motion for summary judgment, not a Rule 12(b) motion to dismiss. *Albino*, 747 F.3d at 1166. However, the "[i]n the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Id.* Failure to exhaust administrative remedies requires dismissal of the claim without prejudice. *See Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006) (requiring dismissal without prejudice where

8

1   prisoner fails to exhaust administrative remedies before submitting complaint to district court).

**c.     Analysis**

Defendants argue that Plaintiff has failed to exhaust his administrative remedies for this claim, and that the failure to exhaust is clear on the face of the complaint. Specifically, Defendants argue that the three grievances attached to the operative complaint—Grievance Nos. 24762, 70624, and HC 2100382—do not exhaust the claims in this action for the following reasons. First, Defendants argue that Grievance No. 24762 does not exhaust the claims in this action because it is not against the four named defendants, does not state the same facts alleged in the operative complaint, and concerns an issue distinct from the claims in this action: early release from prison due to health factors that make Plaintiff uniquely and highly susceptible to COVID. Second, Defendants argue that Grievance No. 70624 does not exhaust the claims in this action because it does not mention Operation Akili, which Defendants argue is the "centerpiece" of this action; and that the failure to mention Operation Akili deprived the CDCR of the opportunity to investigate and resolve Plaintiff's issues. Third, Defendants argue that Grievance No. HC 20100382 does not exhaust the claims in this action because it concerns Plaintiff possibly contracting Valley Fever; and does not mention Operation Akili, the four named defendants, or the various actions/inactions that allegedly caused Plaintiff to contract COVID. ECF No. 44 at 22–23. In response, Plaintiff states that *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2014), holds that a grievance suffices if it alerts the prison the nature of the wrong for which redress is sought, and that "[p]rison officials were adequately and timely placed on notice" through his grievances. ECF No. 52 at 6.

Viewing the operative complaint and its attachments in the light most favorable to Plaintiff, the Court finds that neither Grievance No. 24762 nor Grievance HC 2100832 exhausted the claims in this action, but Grievance No. 70624, if fully exhausted, exhausts some of the claims raised in this action.

As an initial matter, Plaintiff misstates the holding in *Sapp*. *Sapp* requires the inmate to "provide the level of detail provided by the prison's regulations." *Sapp*, 623 F.3d at 824. The holding that a grievance satisfies the PLRA's exhaustion requirement when it alerts the prison to

9

the nature of the wrong for which redress is sought applies only where the prison's regulations are incomplete or silent as to the factual specificity required in a grievance. *Sapp*, 623 F.3d at 824. For a grievance to exhaust the claims raised in this action, it is insufficient to alert prison officials generally to these claims; the grievance must also comply with all relevant CDCR regulations, including Section 3842(c)(2)'s directive to provide the names and titles of all involved staff members, or a description of these staff members, to the best of the inmate's knowledge.

Grievance No. 24762 and Grievance HC 2100832 do not exhaust the claims in this action. The subject matter of these grievances is distinct from the claims raised in this action. Grievance No. 24762 alleges that Plaintiff's health factors make him particularly vulnerable to COVID. Grievance No. 24762 does not allege that specific prison policies or decisions were intended to spread, or facilitate the spread of, COVID. Grievance HC 2100832 seeks treatment for Valley Fever, which is not at issue in this action.

Grievance No. 70624 alleges that defendants Koenig, Metcalf, and Galvin moved COVID-positive inmates into X-Wing and allowed COVID-positive inmates to use the same showers as COVID-negative inmates, knowing that these actions put Plaintiff at serious risk of contracting COVID. Grievance No. 70624 therefore exhausts the operative complaint's claims that Defendants caused Plaintiff to contract COVID when they moved inmate Kim into X-Wing when he was COVID-positive; when they moved inmate Garcia into X-Wing before his incubation period was over; and when they allowed COVID-positive inmates to use the same showers as COVID-negative inmates.[2] The Court therefore DENIES Defendants' motion to dismiss these claims for failure to exhaust administrative grievances.

However, Grievance No. 70624 does not exhaust the claims against defendant Posson or the remaining claims against defendants Koenig, Metcalf, and Galvin. Grievance No. 70624 makes no reference to the July 20, 2020 raid; to COVID-positive inmates being allowed to use the

---

[2] The Court presumes of Grievance No. 70624 is exhausted, even though there is no final level decision in the record. Plaintiff has alleged that the Office of Appeals failed to provide a final response to Grievance No. 70624 within sixty calendar days. 15 Cal. Code Regs. § 3485 provides that that the first level decision serves as the final decision if the Office of Appeals is unable to issue a decision within sixty days from receipt of the grievance. 15 Cal. Code Regs. § 3485(g), (1).

10

same phones and eating trays as COVID-negative inmates; or to any failure to quarantine COVID-positive inmates. Grievance No. 70624 also makes no reference to defendant Posson. Grievance No. 70624's general statement that "other state employees act[ed] in concert" with defendants Koenig, Metcalf, and Galvin is too vague and broad to give Defendants notice that Plaintiff believed that defendant Posson was responsible for any of the alleged wrongdoings at issue in this action. It appears from the face of the operative complaint that all claims against defendant Posson are unexhausted. It also appears from the face of the operative complaint that following claims are unexhausted: defendants Koenig, Metcalf, and Galvin deliberately exposed Plaintiff to COVID by authorizing and carrying out the July 20, 2020 raid; by allowing COVID-positive inmates to use the same phones and eating trays as COVID-negative inmates; and by failing to quarantine COVID-positive inmates. The Court GRANTS the motion to dismiss defendant Posson and these claims from this action without prejudice for failure to exhaust administrative remedies. *Albino*, 747 F.3d at 1166 ("[i]n the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6).").

### 2. Eighth Amendment Claims

Defendants argue that the Eighth Amendment claims fails because Plaintiff cannot show a causal link between Defendants' alleged actions and his contracting COVID, and because the claim fails under the theory of respondeat superior. Specifically, defendants argue as follows. With respect to the exhausted claims, the amended complaint's only two specific allegations regarding causation are: (1) defendant Koenig authorized and executed Operation Akili on July 20, 2020; and (2) defendant Galvan intentionally moved inmate Kim into X-Wing, where Plaintiff was housed, when inmate Kim was COVID-positive. The remainder of the amended complaint makes general allegations that all defendants were involved in the other actions that caused COVID to spread at CTF, including allowing COVID-positive inmates to use the same showers at COVID-negative inmates. *See* ECF No. 52 at 12–15. In response, Plaintiff argues that Operation Akili was the source of all subsequent infections at CTF; that "legal causation of a disease outbreak does not proceed by impossibly expecting proof of transmission from A to B to C"; and that given "the premeditated, close proximity nature of Akili, broad principles of causation

1 relating to intentional torts effectively render potentially contributing causes immaterial." ECF

2 No. 52 at 4–6. Plaintiff further argues that Defendants are liable for his COVID-19 infection

3 because they knowingly failed to follow their own COVID-19 protocols. ECF No. 52 at 6.

4       A prison official is deliberately indifferent to an inmate's safety in violation of the Eighth

5 Amendment if he knows that prisoner faces substantial risk of serious harm and disregards that

6 risk by failing to take reasonable steps to abate it. *See Farmer v. Brennan*, 511 U.S. 825, 837

7 (1994). Plaintiff incorrectly states the causation standard. Plaintiffs alleging deliberate

8 indifference must demonstrate that the defendants' actions were both an actual and *proximate*

9 cause of their injuries. *Lemire v. Calif. Dep't. of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir.

10 2013); *Mendez v. Cty. of Los Angeles*, 897 F.3d 1067, 1074 (9th Cir. 2018). "The proximate cause

11 question asks whether the unlawful conduct is closely enough tied to the injury that it makes sense

12 to hold the defendant legally responsible for the injury." *Mendez*, 897 F.3d at 1076. "A

13 requirement of proximate cause thus serves, inter alia, to preclude liability in situations where the

14 causal link between conduct and result is so attenuated that the consequence is more aptly

15 described as mere fortuity." *Paroline v. United States*, 572 U.S. 434, 445 (2014). In addition,

16 there is no respondeat superior liability under Section 1983, i.e., liability solely because a

17 defendant is a supervisor of the alleged wrongdoer, or otherwise responsible for the actions or

18 omissions of the alleged wrongdoer. *See Lemire*, 726 F.3d at 1074–75; *Mortimer v. Baca*, 594

19 F.3d 714, 721 (9th Cir. 2010) ("Vicarious liability may not be imposed on a supervisor for the acts

20 of lower officials in a § 1983 action."). A prison official in a supervisory position may be held

21 liable under Section 1983 if he or she was personally involved in the constitutional deprivation, or

22 if a sufficient causal connection exists between the supervisor's unlawful conduct and the

23 constitutional violation. *See Lemire*, 726 F.3d at 1075. This causal connection can include:

24 (1) the supervisors' own culpable action or inaction in the training, supervision, or control of

25 subordinates; (2) the supervisors' acquiescence in the constitutional deprivation of which a

26 complaint is made; or (3) the supervisor engaging in conduct that showed a reckless or callous

27 indifference to the rights of others. *Id.*

28       The remaining claims in this action are that Defendants caused Plaintiff to contract COVID

1   when they moved inmate Kim into X-Wing when he was COVID-positive; when they moved

2   inmate Garcia into X-Wing before his incubation period was over; and when they allowed

3   COVID-positive inmates to use the same showers as COVID-negative inmates.  Accordingly, the

4   Court does not address either parties' arguments regarding Operation Akili.  The Court agrees that

5   Plaintiff has not sufficiently alleged a casual link between these actions and his contracting

6   COVID to state cognizable Eighth Amendment claims.  It is unclear how either (1) moving

7   inmates Kim and Garcia into X-Wing; and/or (2) allowing COVID-positive and COVID-negative

8   inmates to use the same showers was (or were) the proximate cause of Plaintiff contracting

9   COVID in November 2020.  For example, it is unclear when inmates Kim and Garcia were moved

10  into X-Wing; and the time that elapsed, if any, between COVID-positive inmates and COVID-

11  negative inmates using the shower.  Accordingly, the Court GRANTS the motion to dismiss the

12  Eighth Amendment claims arising out of moving inmates Kim and Garcia into X-Wing and out of

13  allowing COVID-positive and COVID-negative inmates to use the same showers.  Because it

14  appears that Plaintiff could remedy this deficiency, the Court GRANTS the motion to dismiss

15  these Eighth Amendment claims, and DISMISSES these claims with leave to amend.  *See Lopez v.*

16  *Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (district court should grant leave to amend unless

17  pleading could not possibly be cured by allegation of other facts).  If Plaintiff chooses to replead

18  these claims in a second amended complaint, Plaintiff should identify how these actions were

19  proximate cause of his COVID infection.

20              **3.      State Law Claims**

21       Defendants argue that the state law claims should be dismissed for failure to comply with

22  the California Government Claims Act; for failure to adequately allege battery, negligence, and

23  negligent supervision; and because they are barred by the state law immunities set forth in Cal.

24  Gov't Code §§ 820.2, 820.8, and 855.4.

25       The Court DENIES as moot the motion to dismiss the state law claims because the Court

26  has dismissed all the federal law claims.  28 U.S.C. § 1367(c)(3) provides that a district court may

27  decline to exercise supplemental jurisdiction if it dismisses all claims over which it has original

28  jurisdiction.  28 U.S.C. § 1367(c)(3); *see also Foster v. Wilson*, 504 F.3d 1046, 1051–52 (9th Cir.

13

2007) ("The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion."). If Plaintiff chooses to file a second amended complaint to address the deficiencies identified above with regard to his federal claims, Plaintiff may re-plead his state law claims. The Court will screen any state law claims at that time.

The Court advises Plaintiff that when a plaintiff asserts state law tort claims, he or she must affirmatively allege in his complaint that he or she has complied with the claim-filing requirements imposed by the California Government Claims Act, or circumstances excusing such compliance. *Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 627 (9th Cir. 1988) (dismissing state law tort claims where operative complaint failed to allege compliance with California tort claim procedures). In relevant part, the California Government Claims Act ("GCA") requires that a plaintiff must (1) file the state law tort claim with the California Department of General Services ("DGS") no later than six months after the cause of action accrued; and (2) file the lawsuit in state or federal court no later than six months after the DGS' rejection notice is personally delivered or deposited in the mail. Cal. Gov't Code §§ 911.2, 945.6.

Here, it is unclear whether Plaintiff has complied with the GCA.

It is unclear whether the claim that Plaintiff filed with the DGS raised the state law claims in this action, as the claim is not in the record.

It is also unclear whether the claim was timely filed. Plaintiff's cause of action presumably accrued on or about November 27, 2020, when he learned that he had contracted COVID. If so, Plaintiff was required to file his government claim by May 15, 2021. Given that the DGS is required to respond to claims within 45 days of receipt pursuant to Cal. Gov't Code § 912.4, a rejection notice dated September 15, 2021, implies that the earliest Plaintiff filed the claim was August 1, 2021, which would render the claim untimely by two months.

Finally, it is also unclear whether this action was timely filed. Assuming the date on the rejection notice was when the notice was deposited in the mail, Plaintiff was required to file any lawsuit raising state law claims rejected in the September 15, 2021 notice by March 15, 2022. Yet this action was filed on May 6, 2022. ECF No. 44 at 15–16.

14

In preparing a second amended complaint, if Plaintiff wishes to re-plead his state law claims, he must also affirmatively allege compliance with the California Government Claims Act ("GCA").

**CONCLUSION**

For the reasons set forth below, the Court ORDERS as follows.

1. The Court grants in part and denies in part Defendants' motion to dismiss as follows. The Court grants the motion to dismiss the following claims for failure to exhaust administrative remedies: all claims against defendant Posson, and the claims that defendants Koenig, Metcalf, and Galvin caused Plaintiff to contract COVID by authorizing the July 20, 2020 raid; allowed COVID-positive inmates to use the same phones and eating trays as COVID-negative inmates; and failed to quarantine COVID-positive inmates. The dismissal of these claims is without prejudice to filing a new action raising these claims once administrative remedies have been exhausted. The Court denies the motion to dismiss the claims that Defendants caused Plaintiff to contract COVID when they moved inmate Kim into X-Wing when he was COVID-positive; when they moved inmate Garcia into X-Wing before his incubation period was over; and when they allowed COVID-positive inmates to use the same showers as COVID-negative inmates on the grounds that they failed to exhaust administrative remedies, but grants the motion to dismiss these claims on the grounds that they fail to state Eighth Amendment claims. The Court grants Plaintiff leave to amend these claims. The Court denies as moot the motion to dismiss the state law claims, but grants Plaintiff leave to re-plead these claims if he chooses to file a second amended complaint.

2. Within twenty-eight (28) days of the date of this order, Plaintiff shall file an amended complaint that addresses the identified deficiencies. The amended complaint must include the caption and civil case number used in this order, Case No. C 22-02721 JST (PR) and the words "SECOND AMENDED COMPLAINT" on the first page. If using the court form complaint, Plaintiff must answer all the questions on the form in order for the action to proceed. An amended complaint completely replaces the previous complaint. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th Cir. 2012). Accordingly, Plaintiff must include in his second

amended complaint all the claims he wishes to present and all of the defendants he wishes to sue, and may not incorporate material from the prior complaints by reference.  Failure to file a second amended complaint in accordance with this order in the time provided will result in dismissal of this action without further notice to Plaintiff for failure to state a claim and/or failure to prosecute.  The Clerk shall include two copies of the court's complaint form with a copy of this order to Plaintiff.

This order terminates ECF No. 44.

**IT IS SO ORDERED.**

Dated:  September 27, 2024

JON S. TIGAR
United States District Judge